Two attorneys, I. Harry Lyon and Michael D. Blalock, appealed from the order of the Alabama State Bar Disciplinary Board (Board) that they each receive a private reprimand for failure to comply with specific disciplinary rules regarding advertising. We affirm in part and reverse and remand in part.
On February 19, 1981, Lyon and Blalock published an advertisement in the Shelby County Reporter, a weekly newspaper of *Page 1368 
general circulation in the municipality and county in which the office of the attorneys was located.
On April 6, 1981, the general counsel of the Alabama State Bar (Bar), William H. Morrow, Jr., filed a complaint in the office of the secretary of the Bar alleging that Lyon and Blalock had violated several disciplinary rules of the Code of Professional Responsibility of the Bar by placing the February 19, 1981, advertisement. That advertisement read as follows:
 "LEGAL SERVICES "PROVIDED BY
"HARRY LYON AND MIKE BLALOCK
"ATTORNEYS AT LAW
 "SUITE 207-209 JOHNSON BUILDING "HIGHWAY 31 SOUTH IN PELHAM
 "UNCONTESTED DIVORCES ...................... $145.00 "W/Agreement ............................. $250.00
"PERSONAL BANKRUPTCY ....................... $350.00
 "SIMPLE WILLS .............................. $ 75.00 "Video Taped Will ........................ $250.00
"PHONE 987-7007 FOR APPOINTMENT
"(ABOVE FEES DO NOT INCLUDE COURT COSTS)"
In Charge I, the Bar alleged that "[b]y advertising their services for a fee to prepare a `Video Taped Will' the attorneys . . . participated in the use of a form of public communication which contained misleading or deceptive statements since the words `Video Taped Will' have no clearly defined meaning to the members of the legal profession or to the public." Therefore, the Bar charged the attorneys with failure to comply with DR 2-101 (A), which provides:
 "A lawyer shall not prepare, cause to be prepared, use, or participate in the use of any form of public communication that contains false, fraudulent, misleading, deceptive or professionally self-laudatory statements."
The Bar alleged in Charge II that "[b]y advertising for a specific fee the preparation of a `Video Taped Will' the attorneys included in the advertisement services other than `routine legal services' as defined in DR 2-102 (A)(7)(b)." DR 2-102 (A)(7)(b), prior to its amendment effective January 26, 1983, provided:
 "The advertisement may contain a description of routine legal services performed by the lawyer. `Routine legal services' are limited to uncontested divorces, uncontested adoptions, simple personal bankruptcies, changes of name, and the like. If the advertisement states the fees charged for such services, it shall only state the maximum lawyer's fee to be charged therefor and a separate reasonably accurate estimate of the costs that will be incurred in addition to the lawyer's fees."
Accordingly, the Bar charged the attorneys with failure to comply with that disciplinary rule.
Charge III also dealt with an alleged violation of DR 2-102 (A)(7)(b). The Bar alleged that "[t]he advertisement . . . did not contain a separate reasonably accurate estimate of the costs that [would] be incurred in addition to the lawyer's fees."
Charge IV concerned an alleged violation of DR 2-102 (A)(7)(e), but that charge was subsequently dismissed at the Board's hearing because Lyon and Blalock had in fact complied with that rule.
In Charge V, the Bar alleged that "[t]he attorneys [had] failed to include in the advertisement . . . the disclaimer required," and thus charged the attorneys with violating DR 2-102 (A)(7)(f), which, until the January 26, 1983, amendment, provided:
 "No advertisement shall be published unless it contains, in legible print, the following language:
 "`No representation is made about the quality of legal services to be performed or the expertise of the lawyer performing such services.'"
No substantive change was made by the January 26, 1983, amendment insofar as this charge is concerned.
In their answer, Lyon and Blalock admitted placing the advertisement containing a quoted price for a "Video Taped Will" on February 19, 1981. They denied the remaining allegations and raised the following affirmative defenses:
 "A. That DR 2-102 (A)(7)(c) states `No representation shall be made in any [. . .] advertisement about the quality of legal *Page 1369 
services to be performed or the expertise of any lawyer or firm of lawyers to perform such services.'
 "That respondents in their ad did not make any representation as to quality of services or expertise.
 "That respondents contend that having complied with DR 2-102 (A)(7)(c), that DR 2-102 (A)(7)(f) does not apply.
 "B. That DR 2-102 (A)(7)[(f)] (the disclaimer/exculpatory clause) is a clear and flagrant contradiction to DR 6-102 Limiting Liability to Client which states `A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice' therefore to include the disclaimer/exculpatory clause as recited in DR 2-102 (A)(7)(f) is to violate DR 6-102.
 "That Respondents contend that Petitioner's Complaint is without merit in that Respondents have complied with and rely on the landmark decision of the United States Supreme Court in the case of Bates v. Arizona State Bar Association, 43 [433] U.S. 350 [97 S.Ct. 2691, 53 L.Ed.2d 810] (1977), and the First Amendment to the United States Constitution.
 "That if Respondents are found to have violated any disciplinary rule related to advertising as set forth in Petitioner's Complaint, that said rule is unreasonable and therefore void ab initio (See Bates v. Arizona, 43 [433] U.S. 350 [97 S.Ct. 2691, 53 L.Ed.2d 810] (1977)."
The Board conducted a hearing in Jefferson County on February 18, 1983. At the hearing, the Bar called upon Lyon and Blalock as adverse witnesses under Rule 43 (b), A.R.Civ.P. The Bar offered into evidence a copy of the February 19, 1981, Shelby County Reporter containing the advertisement of Lyon and Blalock.
The Bar and members of the Board questioned Lyon and Blalock about the charges against them, and the two attorneys presented their defenses to the Board. After the hearing, the Board found Lyon and Blalock guilty of Charges I, II, III, and V, and fixed the discipline as a private reprimand. Lyon and Blalock appealed to this Court pursuant to Rule 8 (d) of the Rules of Disciplinary Enforcement.
The issues before this Court are whether sufficient evidence was presented to support the Board's finding that Lyon and Blalock were guilty of the charges brought against them under DR 2-101 (A), DR 2-102 (A)(7)(b), and DR 2-102 (A)(7)(f), and whether those rules violated the constitutional guarantee of commercial free speech as applied to the appellants' advertisement.
The United States Supreme Court held for the first time inBates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691,53 L.Ed.2d 810 (1977), that First Amendment protection extended to "truthful" advertising of "routine" legal services by attorneys, and that, accordingly, attorney advertising could not be subjected to blanket suppression. The Court emphasized, however, that false, deceptive, or misleading advertising remained subject to restraint.
Subsequently, the Court discussed Bates and the standard by which the state regulation of attorney advertising would be judged in In The Matter Of R.M.J., 455 U.S. 191, 203,102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982):
 "Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proven that in fact such advertising is subject to abuse, the states may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the states may not place an absolute prohibition on certain types of potentially misleading information, e.g., a listing of areas of practice, if the information also may be presented in a way that is not deceptive. Thus, the Court in Bates suggested that the remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation. 433 U.S. at 375, 97 S.Ct. at 2704. Although the potential for deception and confusion is particularly *Page 1370 
strong in the context of advertising professional services, restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception.
 "Even when a communication is not misleading, the state retains some authority to regulate. But the state must assert a substantial interest and the interference with speech must be in proportion to the interest served. Central Hudson Gas Co. v. Public Service Comm'n, 447 U.S. [557] at 563-564, 100 S.Ct. [2343] at 2350 [65 L.Ed.2d 341 (1980) ]. Restrictions must be narrowly drawn, and the state lawfully may regulate only to the extent regulation furthers the state's substantial interest. . . ." (Footnote omitted.)
 I
In determining the issue of sufficiency of the evidence to support the Board's finding that Lyon and Blalock violated DR 2-101 (A) (Charge I), we must decide initially who bears the burden of proving whether or not an advertisement is "misleading." This question is important in the present case because Lyon and Blalock assert that the Bar produced no evidence at the disciplinary hearing to show that the words "Video Taped Will" were misleading. The Bar responds that the attorneys had the initial burden "to show that their specific advertisement [was] entitled to First Amendment protection," and quotes the following passage from Bates in support of its position:
 "In the First Amendment context, the Court has permitted attacks on overly broad statutes without requiring that the person making the attack demonstrate that in fact his specific conduct was protected. . . .
". . . .
 ". . . Since overbreadth has been described by this Court as `strong medicine,' which `has been employed . . . sparingly and only as a last resort,' Broadrick v. Oklahoma, 413 U.S. [601] at 613, 93 S.Ct. [2908] at 2916 [37 L.Ed.2d 830], we decline to apply it to professional advertising, a context where it is not necessary to further its intended objective. . . ." Bates, 433 U.S. at 380-381, 97 S.Ct. at 2707.
The Bar contends that this quotation from Bates indicates that the Court intended for a person attacking a regulation on First Amendment grounds to first show that the speech sought to be regulated was protected. If that was the Court's intention, then, in the commercial speech context, since misleading advertising may be prohibited, In The Matter Of R.M.J.,455 U.S. at 203, 102 S.Ct. at 937, that person would have to prove that the speech was not misleading. The Bar argues that the attorneys accused of violating DR 2-101 (A) had to prove that the advertisement was not misleading, thus relieving the Bar from proving that it was misleading.
The Bates court determined that the advertisement at issue in that case was not misleading and therefore was entitled to First Amendment protection. In making its determination, the Court responded to the Bar's arguments that the advertisement was misleading and stated: "We conclude that it has not been demonstrated that the advertisement at issue could be suppressed." 433 U.S. at 382, 97 S.Ct. at 2708. The Court did not state who failed to demonstrate that the advertising could be suppressed, but it seems logical to presume that it was the Bar, since the Court alluded to the Bar's arguments and because the attorneys would not be trying to demonstrate that their advertisement could be suppressed.
Similarly, in R.M.J., supra, the Court stated that the appellant's listing of areas of practice had "not been shown to be misleading," without indicating by whom. Again, the inference is that it was the Bar which did not show that the advertisement was misleading.
Therefore, reading the Court's analyses in Bates and R.M.J.
in light of the language from Bates quoted by the Bar, it is unclear whether the Supreme Court intended to place the burden of proof upon *Page 1371 
an attorney in a disciplinary proceeding brought by a state bar. In the absence of a clear mandate in that regard, we are hesitant to depart from the traditional rule. The Bar has the burden in a disciplinary proceeding to show by the evidence that the lawyer charged has violated the rules. E.g., Dodd v.Board of Commissioners of the Alabama State Bar, 365 So.2d 975,977 (Ala. 1978).
Therefore, with regard to Charge I, the burden was on the Bar to prove that Lyon and Blalock's inclusion of the words "Video Taped Will . . . . . $250.00" caused the advertisement to be misleading. In its brief, the Bar states:
 "The following questions propounded to the Respondents by members of the Disciplinary Board are significant, since it appears that to the members of the Disciplinary Board, all experienced attorneys, the words `Video Taped Will' had no clearly defined meaning.
"Mr. Sherrill: What is a video tape will, Mr. Lyon?
 "Mr. Chairman: Does the video tape will supplement a written will?
 "Mr. Robinson: All right. Your charge you list in there, $250. Does that include everything including the cost of film and all that?"
Then, in its argument that Lyon and Blalock violated DR 2-101 (A) (Charge I), the Bar states:
 "As hereinabove illlustrated, by quotations set forth in the Statement Of The Facts, the members of the Disciplinary Board, all experienced attorneys, did not understand the meaning of the words `Video Taped Will.'
". . . .
 "The record reflects that the words `Video Taped Will' have no clearly defined meaning to the members of the legal profession, and, a fortiori, would be virtually meaningless to a member of the unsophisticated public."
The Bar must prove the guilt of the attorneys charged by a preponderance of the evidence, Dodd v. Board of Commissionersof the Alabama State Bar, 350 So.2d 700, 705 (Ala. 1977). The record reveals that the Bar introduced no evidence that the words "Video Taped Will" caused the advertisement to be misleading, but relied instead on the questions asked by the Board during the hearing as evidence. Therefore, the Bar failed to prove that Lyon and Blalock were guilty of Charge I, and, accordingly, the Board's finding that Lyon and Blalock were guilty of Charge I is due to be reversed.
 II
In its argument that Lyon and Blalock violated DR 2-102 (A)(7)(b) (Charge II), which allows for attorney advertising of "routine legal services," the Bar concluded that the advertisement of the video taped will was not the advertisement of a routine legal service. That conclusion was also based upon questions from the Board and the testimony of Lyon that he had learned about video taped wills only a year prior to the advertisement:
 "Since it is apparent that the members of the Disciplinary Board did not comprehend the precise meaning and significance of the words `Video Taped Will,' and since the Respondent, I. Harry Lyon, only learned of the meaning and significance of these words just approximately a year before the publication of the advertisement of February 19, 1981, it is obvious that a member of the public would have no idea what he was asked to purchase for a price of 250.00." (Appellee's brief, p. 18.)
The fact that Lyon had learned about video taped wills only a year prior to the advertisement is not enough to create a preponderance of the evidence that a video taped will is not a routine legal service. For that reason, and the reasons discussed in regard to Charge I, the Board's finding that Lyon and Blalock were guilty of Charge II is also due to be reversed.
 III
In addition to the requirement that only routine legal services may be advertised, *Page 1372 
DR 2-102 (A)(7)(b) requires that a reasonably accurate estimate of court costs be included in an attorney's advertisement. Charge III dealt with that aspect of the rule. Lyon and Blalock admitted that they did not strictly comply with this rule; however, they included in each advertisement the following statement: "(ABOVE FEES DO NOT INCLUDE COURT COSTS)." The attorneys stated at the hearing that they anticipated that the legislature might increase the court costs and, therefore, they did not include any specific cost estimates. The Bar argues that the attorneys could have included a reasonable estimate and that their uncertainty about the costs did not excuse them from compliance with the rule.
Our analysis of the Board's finding that the attorneys were guilty of Charge III is a different one from the analyses of Charges I and II. In the preceding discussion of those charges, we were concerned with whether the Bar proved that Lyon and Blalock violated the rules as charged. Because we held that the Bar had not met its burden of proving that those rules were violated, we did not reach the issue of the constitutionality of those rules. In regard to Charge III, the attorneys admit that they did not comply with the requirement of DR 2-102 (A)(7)(b) to include an estimate of court costs. The question, then, is not whether the rule was violated, but whether the requirement to include an estimate of court costs is a constitutional restriction on attorney advertising.
To answer that question, we turn to the test which was formulated in Central Hudson Gas v. Public Service Commissionof New York, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351,65 L.Ed.2d 341 (1980) (quoted in In The Matter of R.M.J.,455 U.S. at 203-04, 102 S.Ct. at 937-38:
 "In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."
Lyon and Blalock included in their advertisement a statement that the costs for the services advertised did not include court costs. An inclusion of specific costs would have made the advertisement more informative to some, but that, in and of itself, is not enough to cause the advertisement to be misleading. Anyone reading the advertisement would have been aware that the prices did not include court costs and could have taken steps to determine what those costs were.
Furthermore, the Bar has not identified any substantial interest in having a list of specific court costs included in an advertisement rather than a statement such as the one used by Lyon and Blalock in their advertisement. Central Hudson Gas,supra. Therefore, this restriction upon Lyon and Blalock's First Amendment rights cannot be sustained under the facts of this case. The Board's finding of guilty under Charge III is due to be reversed.
 IV
Charge V deals with DR 2-102 (A)(7)(f), which required the following disclaimer: "No representation is made about the quality of legal services to be performed or the expertise of the lawyer performing such services." The attorneys admit that they failed to include this disclaimer in their advertisement. Therefore, as in the preceding discussion of Charge III, the issue is not whether the Bar proved that the rule was violated, but whether the rule is constitutional. This Court previously addressed that issue in Mezrano v. Alabama State Bar,434 So.2d 732 (Ala. 1983), and upheld the disclaimer requirement as a constitutional restriction on commercial speech. *Page 1373 
In Mezrano, we stated that the Bar could reasonably conclude that attorneys should not hold themselves out as being superior to other attorneys, because the Bar has no rating system for attorneys. 434 So.2d at 735. Additionally, we found that attorneys' representations about the quality of their legal services could mislead the public, because the Bar does not identify attorneys as specialists. Id. Implicit in our holding in Mezrano is that any type of price advertising by attorneys involves inherent questions of quality. This premise was recognized by Justice Powell in Bates:
 "[T]he Court notes that it has not addressed `the peculiar problems associated with advertising claims relating to the quality of legal services.' [433 U.S. at 366, 97 S.Ct. at 2700] There are inherent questions of quality in almost any type of price advertising by lawyers, and I do not view appellants' advertisement as entirely free from quality implications." 433 U.S. at 400 [97 S.Ct. at 2717] (Powell, J., concurring in part and dissenting in part).
Furthermore, it is reasonable to assume that some readers of an advertisement, such as the one presently before us, might believe that the attorney is a specialist or has greater expertise in performing the services advertised than attorneys who do not advertise. Accordingly, we upheld the disclaimer requirement in Mezrano because of the Bar's substantial interest in preventing the public from being misled. This restriction meets the requirements of Central Hudson Gas andR.M.J. because the disclaimer is directly related to that interest, and it is not more extensive than necessary to serve that interest. Therefore, the Board's finding that Lyon and Blalock were guilty of Charge V is due to be affirmed.
Based upon our preceding discussion of the issues presented in this case, the Board's findings that Lyon and Blalock were guilty of Charges I, II, and III are due to be, and they hereby are reversed, and the case is remanded as to Charges, I, II, and III for further proceedings consistent with this opinion. The finding that the attorneys were guilty of Charge V is due to be, and it is hereby, affirmed.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
All the Justices concur, except MADDOX, J., who recuses himself.